PER CURIAM.
Respondent-appellant appeals an order granting appellee’s petition to enforce its lien for legal services.
Respondent-appellant, Vernamae Kindy, married Phillips Kindy on January 30, 1971. Prior thereto, they entered into an antenuptial agreement. In March 1972, marital difficulties had developed and respondent, Mrs. Kindy, contacted Krongold and Bass, P.A., petitioner-appellees, and requested Mr. Krongold to render an opinion as to the effectiveness of the antenup-tial agreement. After having researched the matter, Mr. Krongold opined that it was effective as to divorce and death and precluded respondent from obtaining dower. Thereafter, Reuben Schneider, Phillips Kindy’s attorney, prepared a post-nuptial agreement and forwarded this agreement to Krongold in May 1972. Krongold reviewed the post-nuptial agreement and advised Mrs. Kindy that this agreement, like the antenuptial agreement, precluded her from exercising her dower rights. Nevertheless, against the advice of Krongold, respondent signed the post-nuptial agreement. However, her husband Phillips never signed this agreement. Also in May 1972, Phillips Kindy executed his will leaving 15% of his estate to the respondent-appellant. Immediately thereafter, respondent and her husband Phillips executed a handwritten revocation of all antenuptial and post-nuptial agreements. This revocation was neither witnessed nor notarized. On July 7, 1972, respondent-appellant contacted Krongold and Bass, P.A. with regards to a proposed second post-nuptial agreement which eventually was prepared by Reuben Schneider, but never signed by Phillips Kindy or the respondent. Sometime during the summer of 1972, Phillips Kindy physically destroyed the original antenup-tial agreement and acknowledged this fact to one Judith Jaffe.
On November 3, 1972, Phillips Kindy consulted his attorney, Reuben Schneider, for the purpose of instituting a divorce action. On November 5, 1972, Phillips committed suicide leaving an estate valued in excess of $1,000,000. On November 6th or 7th, respondent-appellant went to the offices of Krongold and Bass, P.A. to discuss her deceased husband’s estate, the alternative courses of action open to her and their representation of her in this matter. Krongold requested the respondent to return to his office on November 9, 1972 because he was going to make a further investigation. On the 9th of November, respondent-appellant returned to the offices of Krongold and Bass, P.A., and Krongold informed the respondent of the probable heated, bitter estate litigation if she elected to take dower instead of taking her 15% of the estate pursuant to her husband’s will.
Having been made aware of the protracted litigation ahead upon a dower election, respondent signed an attorney fee contract which provided that respondent-appellant agreed to pay petitioner-appellee, Krongold and Bass, P.A., 20% of the gross recovery which respondent obtained from her deceased husband’s estate pursuant to her dower rights. The agreement further provided that should respondent decide not to take pursuant to her dower rights then petitioner-appellees would be compensated at an hourly rate. At the end of November 1972, respondent-appellant decided to elect dower and petitioner-appellees filed a petition to elect dower on behalf of the *351 respondent on December 15, 1972. The executor of Phillips Kindy’s estate filed an objection thereto. When this matter came on for final hearing, petitioner-appellees presented for the first time the handwritten revocation of the antenuptial agreement. Thereupon, the executor withdrew its objection. After the judgment of dower had been: entered by the court, respondent-appellant discharged Krongold and Bass. Thereupon, Krongold and Bass filed a petition to enforce a lien for their legal services against Vernamae Kindy, the respondent-appellant, based upon the November 9, 1972 retainer agreement. The cause proceeded to trial and respondent defended upon the ground that a fee of 20% of her dower was unfair, unreasonable and unconscionable. The focal point of the controversy was at what time petitioner-appellees became aware of the handwritten revocation of May 27, 1972. Respondent-appellant alleged that as early as June 1972, she had sent a copy of the revocation to Krongold and had requested his opinion as to the validity and legality thereof. She further testified that on November 6, 1972, she again had discussed with Krongold the validity of the revocation agreement. Petitioner-appellees alleged that they first became aware of the revocation agreement in late November or early December 1972. At the conclusion of the trial, the trial judge found, inter alia, that petitioner-ap-pellees at the time the retainer agreement was entered into had no knowledge of the handwritten revocation agreement. The judge then entered the herein appealed judgment granting to petitioner-appellees an attorney’s charging lien of 20% of the distribution to the respondent, Vernamae Kindy, pursuant to the judgment of dower entered in her favor.
 For her first point on appeal, respondent contends that a contract between an attorney and his client with whom that attorney had an immediate, prior attorney-client relationship must provide for a fair, equitable and reasonable fee at its inception and thus the trial court erred in determining that the retainer agreement was not excessive. We find merit in this contention.
First, hereunder, we note that it is very apparent that respondent entered into the subject retainer agreement based upon an anticipated bitter court contest by the executor of the Phillips Kindy estate upon respondent’s filing of an election to take dower. Viewing the evidence most favorable to petitioner-appellees, the record reflects that Krongold and Bass became aware of the revocation agreement in late November or early December shortly after respondent entered into the contingency fee contract and before respondent requested petitioners to file her election to take dower. At the time Krongold and Bass learned of the revocation agreement, they were under a duty to inform their client, the respondent, of this important discovery and its impact upon the anticipated litigation, i. e., that the executor of her husband’s estate may recognize the revocation agreement and there would, be no contest. It follows that the disclosure to the respondent of the significance of the revocation would have had a great effect upon the 20% contingency fee agreement.
Second, the evidence in the case at bar clearly reflects that the subject retainer agreement had been entered into subsequent to the original attorney-client relationship between petitioners and the respondent and, therefore, the burden of showing the fairness of this agreement, while not presumptively void, rests upon the petitioner attorneys. See Halstead v. Florence Citrus Growers Assn. et al., 104 Fla. 21, 139 So. 132 (1932). After a careful review of the record on appeal, we only can conclude that petitioner-appellees, Krongold and Bass, did not establish by clear and convincing proof that the agreement between them and their client, the respondent, was fair and equitable and was made on full and adequate consideration as required by Halstead, supra.
Accordingly, the judgment herein appealed is reversed and the cause is remanded *352 to the trial court for a new trial to deter-' mine the amount of the attorney’s lien upon respondent’s assignment of dower based upon a quantum meruit theory.
Reversed and remanded.
NATHAN, J., dissents.